# EXHIBIT B

**CONFIDENTIAL MEMORANDUM**

FRANCES CICOGNA/BRIAN DOLLARD INVESTIGATION

---

**Investigation Background and Allegations Under Investigation**

**Background**

      Frances Cicogna began a Short Term Disability leave of absence on October 24, 2016. A few weeks later, Canon USA, Inc. ("Canon") received a letter dated November 21, 2016 from an attorney representing Ms. Cicogna. The letter raised allegations of sexual harassment against her supervisor, Brian Dollard. This was the first time any such allegations were raised to Canon. As such, Human Resources (Jami Schultz and Elina Wallis) promptly commenced an investigation.

**Allegations investigated**

      Ms. Cicogna alleged that since approximately May 6, 2015, Mr. Dollard forced her to engage in an ongoing sexual relationship. Ms. Cicogna and Mr. Dollard occasionally traveled together on business trips as part of their job responsibilities. Ms. Cicogna alleged that during these business trips, Mr. Dollard would force her to stay in his hotel room, "cuddle" with him and kiss him. She further claimed that he would often make sexual comments and engage in other inappropriate activities of a sexual nature (although she never explicitly claimed that they had intercourse). In addition, he indicated that he could help her get a job at a subsidiary in Venlo, Netherlands and asked to "cuddle" while he was coaching her. Ms. Cicogna also claimed that Mr. Dollard, at times, would make her use her own credit card to pay for his hotel rooms and that she was never reimbursed for the expenses. Specifically, she claimed that she paid for a hotel room for Mr. Dollard at the Crowne Plaza in White Plains and at the Wentworth Marriott in New Hampshire. She claimed that Mr. Dollard had engaged in a sexual relationship with at least two other Canon employees in the past (Jennifer Kolloczek and Tonya

Powers).  Ms. Cicogna claimed that she never complained to Human Resources about Mr. Dollard's behavior because when another employee (Bruce Ryle) had filed a complaint with Human Resources about Mr. Dollard and a Franchise Field Program, Mr. Dollard "actively tried to find out who had complained" and told Ms. Cicogna that he was "going to make it very uncomfortable for that employee."  She also alleged that the employees that she carpooled to work with would be able to corroborate her allegations.

**People Interviewed**

   As part of the investigation, Human Resources interviewed the following individuals who were all Canon employees at the time of the interview unless otherwise noted:

- Brian Dollard – Director, Sales and Marketing
- Hiroyuki ("Hiro") Imamura – SVP/GM, Marketing
- Teruyuki ("Terry") Akiba – Sr. Director, Product & Sales Planning
- John Tucci – Specialist, Industry Marketing
- Anthony Spaziante – Sr. Director, Production Solutions, Canon Solutions America, Inc.
- Tom Insinna – Sr. Specialist, General Affairs, Canon Solutions America, Inc.
- Jennifer Kolloczek – Sr. Manager, Marketing
- Tonya Powers – Sr. Manager, Marketing, Canon Solutions America, Inc.
- Kelly Whitley – HR Business Partner
- Frances Cicogna – Advisor, Product Marketing

Human Resources also reviewed expense reports for both Ms. Cicogna and Mr. Dollard and reviewed text messages that were ultimately provided by Ms. Cicogna in February 2017 after she was interviewed by Canon Human Resources.[1]

---

[1] Canon's legal counsel had made numerous requests to Ms. Cicogna's attorneys for any and all email communications, text messages or other documents that would support Ms. Cicogna's allegations.  Nothing was provided until February 2017 after Ms. Cicogna was interviewed and made reference to certain text messages.

**Interview Summaries**

Brian Dollard (Interview #1) – December 1, 2016 (Jami Schultz and Elina Wallis present)

      Mr. Dollard described his working relationship with Ms. Cicogna as having its peaks and valleys.  He has great respect for her and believes she is very smart.  However, in the summer of 2016 she started having some performance issues.  For example, she created a marketing plan for her group in June but by August had failed to follow through with implementing the plan.  He felt that this was not due to a lack of effort, but that sometimes she was spinning in circles.  Ms. Cicogna shared with Mr. Dollard information relating to marriage difficulties that she was having.  Specifically, she shared that she and her husband had not been intimate for at least two years.  This made Mr. Dollard uncomfortable and made him try to create more separation between him and Ms. Cicogna at work.  Mr. Dollard adamantly denied ever engaging in a sexual relationship with Ms. Cicogna.  He denied ever spending time alone in a hotel room with her and denied ever kissing her.  He further denied engaging in a sexual relationship with any other Canon employees.  He also claimed that there may have been a time when Ms. Cicogna paid for his hotel room when he lost his wallet but that he told her to submit the bill through the Company's T&E system so that she would be properly reimbursed.  She left the bill on his desk but he returned it to her desk with a note asking her to include it on her expense report.  He did not know whether Ms. Cicogna actually followed through with submitting the expense.   Regarding the Oce position in Venlo, Mr. Dollard supported Ms. Cicogna in applying for this expat assignment but higher level management at Oce was not in favor.  Mr. Dollard believes the position was ultimately filled but not at the same level.  Regarding the Franchise Field Program, Mr. Dollard did not have any recollection of anyone raising any complaints or of telling Ms. Cicogna that he would "make it very uncomfortable" for the person who complained.  Mr. Dollard was asked whether there were any email communications of a personal nature between him and Ms. Cicogna.  He stated that she has his personal email address and would send business emails to that address.  He stated that there were no personal communications between the two of them.

3

<u>Hiro Imamura and Terry Akiba – December 1, 2016 (Jami Schultz and Elina Wallis present)</u>

Mr. Dollard reported directly to Mr. Akiba who, in turn, reported directly to Mr. Imamura.  Both Mr. Akiba and Mr. Imamura were surprised by Ms. Cicogna's allegations of a sexual relationship.  Neither of them ever witnessed any behavior that would have lead them to suspect or conclude that such a relationship existed.  Neither of them had ever heard any comments or even rumors that would have lead them to suspect that such a relationship existed.  They also never heard him make any inappropriate remarks or sexual comments.  They also shared that due to a business reorganization that had previously been discussed and planned, effective January 1, 2017 Mr. Dollard was going to be moving into more of a sales role rather than his current marketing role and that Ms. Cicogna would no longer be reporting to him.

<u>Kelly Whitley – December 19, 2016 (Jami Schultz participated)</u>

Ms. Whitley is the HR Business Partner supporting the Southwest region which includes Bruce Ryle.  Ms. Whitley recalled that in June 2015, Mr. Ryle left her a voicemail stating that he wanted to talk to her about some concerns that he had with a Franchise Program with which he was involved.  Ms. Whitley spoke with Mr. Ryle the next day to find out exactly what his concerns were.  Mr. Ryle informed Ms. Whitley that since leaving her the voicemail he had spoken with his supervisor (Robert Barbera) and they had discussed a resolution to his concerns.  He said that he no longer needed HR to do anything.  He did not share with Ms. Whitley any details about how his concerns were resolved.

<u>Jennifer Kolloczek – January 3, 2017 (Jami Schultz and Elina Wallis present)</u>

Ms. Kolloczek had a good working relationship with Ms. Cicogna.  She found Ms. Cicogna to be supportive, kind and had a high work ethic.  Ms. Kolloczek also had a good working relationship with Mr. Dollard.  She acknowledged that he can be direct and "harsh" at times.  She shared that Mr. Dollard had screamed at her (Ms. Kolloczek) in the past about work related matters and on one occasion made her cry.  He did subsequently apologize for his behavior.  She denied ever having a sexual relationship with Mr.

4

Dollard.  She never heard Mr. Dollard make any sexual comments.  She also had no knowledge regarding whether Mr. Dollard and Ms. Cicogna had ever engaged in a sexual relationship.  She shared that a few days before Ms. Cicogna went out on her leave of absence they had a conversation.  It was clear to Ms. Kolloczek that Ms. Cicogna was unhappy and in over her head with work related matters.  Ms. Kolloczek encouraged her to talk to Mr. Akiba or to Human Resources but Ms. Cicogna was reluctant to do so because she was afraid Mr. Dollard would find out.  Ms. Kolloczek also shared that based on her observations, Mr. Dollard protected Ms. Cicogna at work.  He helped Ms. Cicogna through the issue with the advertising plans that Ms. Cicogna failed to carry out.  Ms. Cicogna was Mr. Dollard's "right hand" at work.

John Tucci – January 4, 2017 (Jami Schultz and Elina Wallis present)

  Mr. Tucci often carpooled with Ms. Cicogna to and from work – approximately two days per week depending on their schedules.  Ms. Cicogna never discussed her working relationship with Mr. Dollard with Mr. Tucci.  Ms. Cicogna never talked to Mr. Tucci about any physical relationship with Mr. Dollard.  Ms. Cicogna never made any statements that would have lead Mr. Tucci to believe or suspect that Ms. Cicogna was having any kind of physical or sexual relationship with Mr. Dollard.  She often talked about her son during their carpools.

Tom Insinna – January 5, 2017 (Jami Schultz and Bill Mayer, SVP of HR for CSA, present)

  Mr. Insinna also carpooled with Ms. Cicogna to and from work from time to time – approximately twice per month.  Ms. Cicogna was "never really much of a talker" in the car.  She never talked about her job and never talked about her working relationship with Mr. Dollard.  She never talked about any physical relationship with Mr. Dollard. Mr. Insinna never heard Ms. Cicogna say anything that would have lead him to believe or suspect that Ms. Cicogna was having any kind of physical or sexual relationship with Mr. Dollard.  Mr. Insinna did recall one time that Ms. Cicogna asked if the carpool could drop Mr. Dollard off at his hotel on their way home.  He couldn't recall where the hotel was

located but they did drop him off at the hotel by himself.  They then continued driving home with Ms. Cicogna.

Anthony Spaziante – January 5, 2017 (Jami Schultz and Bill Mayer present)

Mr. Spaziante also carpooled with Ms. Cicogna to and from work from time to time but it was not as frequent – less than once per week.  Mr. Spaziante couldn't recall Ms. Cicogna ever talking about her working relationship with Mr. Dollard.  Approximately one year ago, Ms. Cicogna made a comment that she wasn't getting a promotion that she thought she deserved.  She never talked about any physical relationship with Mr. Dollard.  Ms. Cicogna never made any statements that would have lead Mr. Spaziante to believe or suspect that Ms. Cicogna was having any kind of physical or sexual relationship with Mr. Dollard.  Mr. Dollard never joined them in the car for any of their carpools.  Mr. Spaziante did know that Mr. Dollard and Ms. Cicogna traveled together a lot for work and would occasionally see Facebook posts showing the two of them together at certain events with clients.

Tonya Powers – January 10, 2017 (Jami Schultz and Bill Mayer present)

Ms. Powers had a fine working relationship with Ms. Cicogna.  She believed Ms. Cicogna "had a lot on her plate."  She was not always responsive but was always nice and friendly.  Ms. Powers never really saw Ms. Cicogna and Mr. Dollard together so had no information as to what their working relationship was like.  Ms. Powers has known Mr. Dollard since their Oce days.  She used to travel with him at times when they both worked for Oce.  She described Mr. Dollard as a friendly, nice guy and said that they got along "fine."  They got to know each other while traveling together and he often talked about his wife and his kids.  Ms. Powers denied ever having any sexual relationship with Mr. Dollard.  She also denied ever hearing Mr. Dollard make any inappropriate comments.  She didn't have that kind of impression of him.  Ms. Powers knew that Mr. Dollard and Ms. Cicogna traveled together a lot but she never saw or heard anything that would have suggested to her that they were having a sexual or physical relationship.

<u>Brian Dollard (Interview #2) – January 12, 2017 (Jami Schultz and Elina Wallis present)</u>

In a follow up interview, Mr. Dollard explained that in 2014, he and Mr. Akiba made the decision to move Ms. Cicogna from a Manager position to an Advisor position because she was struggling with managing other employees.  This was a lateral move with no loss of salary or benefits.  At that time, Mr. Akiba also made the decision to move Ms. Cicogna out of her manager cubicle and into a non-manager workstation.  Ms. Kolloczek was brought in as the new Manager of this group and as a result, she was moved into Ms. Cicogna's old cubicle.  In 2016, Ms. Cicogna was moved back into a manager cubicle.  She had been performing much better as an individual contributor for some time and so Mr. Dollard decided to try to ease her back into a managerial position by giving her one direct report.  Since she would once again be managing another employee, she was given a manager cubicle again.

Mr. Dollard was asked why he hadn't submitted any expense reports between May and December, 2015.  He stated that it may have been because his manager was trying to get him to move to Melville and he was told he wouldn't be reimbursed for expenses between his home and Melville.

Mr. Dollard did not recall ever staying at a hotel in White Plains.  He claimed that he would never have stayed at the Crowne Plaza in White Plains because he's "a Marriott guy."  He also did not recall ever driving with Ms. Cicogna from White Plains to Melville.

Mr. Dollard denied ever staying at the Wentworth Hotel in New Hampshire.  He stated that he and Ms. Cicogna once had a dinner with a client in Portsmouth, New Hampshire and he "gifted" Marriott hotel points to Ms. Cicogna so that she could stay at the Wentworth following this dinner.  This was a reward for her having been on the road so much and doing such a good job.  Mr. Dollard went home after this dinner because he only lives about one hour away from Portsmouth.  Mr. Dollard stated it was around this time that he got a little nervous that she was sharing too much personal information with him, talking about her family and her lack of intimacy with her husband.  He also shared that Ms. Cicogna once gave him a bottle of Crown Royal in an old wooden box as a present.  She indicated that it was her father's and she wanted Mr. Dollard to have it.  This made Mr. Dollard feel uncomfortable.

Mr. Dollard was asked about a business trip to Savannah, Georgia where he did not submit receipts for a hotel for two nights at the end of his trip. Mr. Dollard said that he would check his records to be certain but when traveling to Savannah for work, he would often extend his trip with personal time to see his daughter who performed in horseback riding shows in that area. So if he did not request hotel reimbursement from Canon, it is most likely because he stayed with his daughter. [Mr. Dollard subsequently confirmed that he did in fact visit his daughter on the dates in question.]

Frances Cicogna – February 2, 2017[2] (Jami Schultz, Elina Wallis and Ms. Cicogna's two attorneys present)

Frances reiterated the allegations set forth in her attorney's complaint letter. She admitted to drinking a lot on several occasions prior to being in Mr. Dollard's hotel rooms. She admitted to kissing him on multiple occasions, going back to his room on multiple occasions and being in bed with him on multiple occasions. Ms. Cicogna claims that she couldn't say no to him because she was afraid and did not want to "jeopardize her career." On a trip to Las Vegas Ms. Cicogna said she told Mr. Dollard "Brian, I don't think it is a good idea to be together. I don't want to be a work wife. I don't want to get a divorce". She said that he agreed and during the next few trips she reminded him of their agreement but he kept asking and making comments about what she was wearing. During the interview Ms. Cicogna's attorney (Ms. Laurie Berke-Weiss) interrupted the interview and claimed that the questions asked to Ms. Cicogna were retaliatory. Ms. Berke-Weiss said we shouldn't discuss feelings but facts and that we should talk about what he did, not what she did.

Ms. Cicogna claims that on the business trip to Savannah, Mr. Dollard wanted to stay an extra day after their business was concluded. Ms. Cicogna agreed to stay because he wanted to and she just "did whatever he wanted." She claims that she let him stay in her room on the extra night because she didn't think she had a choice.
Ms. Cicogna claimed that she spoke to a co-worker about Mr. Dollard forcing her into this relationship but she declined to provide the name of the co-worker.

---

[2] Attempts to schedule an interview with Ms. Cicogna in January 2017 were unsuccessful.

She claimed that she never spoke to anyone in HR because she "didn't know who to go to in HR" and was afraid that HR would tell Mr. Dollard that she complained. She stated that Mr. Dollard was "very vengeful." She claimed that Mr. Dollard once complained to her about another employee in another department and that Mr. Dollard said "I'm going to bury her" (referring to this other employee).

Ms. Cicogna denied that Mr. Dollard ever gifted her Marriott points for her own use. She admitted that one time she gave Mr. Dollard a gift. She had an old bottle of Crown Royal and gave it to him when they were in New Hampshire together. She stated during this interview that giving him this gift was "a mistake." She claimed that she had been "debating whether to do it."

She stated that no one else at Canon had ever treated her inappropriately. Ms. Cicogna stated that Mr. Dollard:

- Never told her that she would be demoted if she refused his advances;
- Never threatened to terminate her employment; and
- Never threatened any negative consequences.

Ms. Cicogna stated that the only person that she told about the relationship with Mr. Dollard was her father. She stated that she never discussed with anyone else the incidents that we discussed in this interview. She said that there was no one else that we should talk to who might have information in support of her specific claims. She stated that in the Summer 2015 she talked to a co-worker about the fact that she was having issues with her manager and asked the co-worker if she should go to HR to complain. The co-worker didn't think that Ms. Cicogna would be "protected" if she went to HR. Ms. Cicogna was not sure what else she told the co-worker. She also declined to provide the name of this co-worker.

Ms. Cicogna stated that in September 2016 Mr. Dollard "forced" her to say "I love you." She claimed that he said to her "Why have you never told me that you love me?" Ms. Cicogna did not know what to say. She claimed Mr. Dollard asked again. She didn't know what to do so she said to him "Brian, don't my actions show it?" Mr. Dollard then said "No, I want to hear it." Ms. Cicogna then said that she just "said it" to him.

At the conclusion of the interview, Ms. Cicogna stated that she had some text messages that Mr. Dollard had sent to her including one text where he said that he "missed" her.  We informed Ms. Cicogna's attorneys that we were going to need copies of any relevant text messages.

**Key Findings**

HR was unable to corroborate Ms. Cicogna's allegations that she was <u>forced</u> into a sexual or physical relationship with her supervisor, Mr. Dollard.

A review of text messages provided by Ms. Cicogna did establish that Mr. Dollard sent a few isolated, inappropriate text messages to Ms. Cicogna.  The text messages consisted of inappropriate banter and jokes.  The text messages, however, did not provide support for the allegation of a physical, sexual, or unwelcome relationship. Mr. Dollard was confronted with the text messages in a third interview on February 14, 2017 (Jami Schultz and Elina Wallis were present).  When questioned about whether he had ever sent Ms. Cicogna text messages with any kind of sexual connotation he denied ever doing so.  When the text messages were shown to him, he still denied sending them and said that he would need to "check the context" of the messages.  He offered no further explanation.

**Conclusions**

Based on the numerous interviews conducted and a review of relevant expense reports and text messages, HR is unable to conclusively determine whether a physical, sexual, or unwelcome relationship existed between Frances Cicogna and Brian Dollard. There is no evidence to support the allegation that any relationship was forced upon her. The evidence suggests that perhaps there was a consensual relationship between these individuals however even this type of relationship cannot be conclusively determined.

HR is able to conclude, however, that Mr. Dollard sent inappropriate text messages.  This conduct alone is in violation of Canon's policies.  Based on this conclusion, the decision was made to terminate Mr. Dollard's employment.

**Above report prepared by Jami Schultz**